THOMPSON, Presiding Judge.
The Cullman County Department of Human Resources (“DHR”) filed in the Cull-man Juvenile Court (“the juvenile court”) a petition seeking to terminate the parental rights of J.N.T. (“the mother”) and J.B.S.. (“the father”) to their minor child, D.C.L.T. (“the child”).. The mother answered and denied the allegations of the petition; the father was served by publication but did not appear in the action. -
On November' 19, 2014, the juvenile court entered a judgment terminating the parental rights of the mother and the father. The mother timely appealed.
We conclude that the mother’s argument concerning the juvenile court’s failure to. properly apply the Indian Child Welfare Act (“the ICWA”), 25, U.S.C. §§ 1901 through 1963, is dispositive of this appeal. Accordingly, we do not reach the other issues raised in her brief submitted to this court.
The mother argues that the juvenile court did not comply with the ICWA. With regard to the child’s heritage as a Native American, DHR presented the following evidence of its attempts to comply with the *354 ICWA at the November 13, 2014, ore ten-us termination hearing. Michelle Cash, the DHR social worker assigned to the case, testified that, approximately two weeks before the termination hearing, she became aware that the mother and the child had family ties with a Native American tribe. It appears that during a 2007 DHR investigation of the child’s maternal grandmother’s ability to care for her children, DHR social workers noted that the mother’s father lived on an Indian reservation in Wisconsin and that the mother visited him occasionally. The mother testified that she had informed DHR of her Native American heritage, but a DHR social worker disputed that testimony.
Elizabeth Alexander, a DHR employee, testified that, upon learning of the child’s heritage, she and a DHR social worker investigated the mother and sent a form (“the inquiry form”) to the Native American tribe at issue, the Stockbridge-Munsee Community Band of Mohicans (“the tribe”), to inquire whether the child was a member of the tribe or was eligible for membership in the tribe. A copy of the inquiry form is not contained in the record on appeal. Alexander did not testify regarding the date the inquiry form was sent, but the record indicates that DHR received a delivery receipt from the United States Postal Service dated November 7, 2014, evidencing that the tribe had received the inquiry form from DHR on that date. Alexander testified that she also had sent that inquiry form to the tribe by facsimile transmission and that she had made telephone inquiries regarding the child’s status with the tribe. However, Alexander stated, she had not received a response from the tribe at the time of the November 13, 2014, termination hearing..
In its judgment, the juvenile court concluded, among other things, that the child was “subject to” the ICWA, the purpose of which is “to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families.” 25 U.S.C. § 1902; see also Ex parte C.L.J., 946 So.2d 880 (Ala.Civ.App.2006). In so concluding, the juvenile court implicitly determined that the child was an “Indian child” under the ICWA; in other words, the juvenile court implicitly determined, the child is either “a member of an Indian tribe or ... is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.” 25 U.S.C. § 1903(4) (defining the term “Indian child”).
We note that the mother has briefly argued that the juvenile court erred in not transferring the action to the tribe’s tribal court; she contends that the juvenile court lacked subject-matter jurisdiction over the child. However, the record indicates that the child has never been domiciled, and has never resided, on the tribe’s reservation. Under the ICWA, a termination-of-parental-rights action involving an Indian child who does not live on the tribe’s reservation shall be transferred to the tribal court, “in the absence of good cause to the contrary,” when either a parent or the tribe petitions for such a transfer. 25 U.S.C. § 1911(b). In this case, no such petition for a transfer was filed, and, therefore, § 1911(b) was not implicated. We reject the mother’s argument that the juvenile court lacked subject-matter jurisdiction on this basis.
The mother also contends that the notice DHR provided to the tribe under the ICWA was inadequate. The ICWA requires that certain people and entities are entitled to notice of certain proceedings involving an Indian child:
“In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster *355 care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child’s tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.... No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe...
25 U.S.C. § 1912(a) (emphasis added).
DHR presented evidence indicating that its employees sent the inquiry form to the tribe to inquire whether the child was a member of the tribe or eligible to be a member of the tribe. Alexander’s testimony indicates that the inquiry form made some mention of the tribe’s right to intervene in the action, but there is no indication in the record on appeal regarding whether the tribe was notified that a termination-of-parental-rights action regarding the child was then pending.[1]
Moreover, the record indicates that the tribe received the inquiry form from DHR on November 7, 2014, less than a week before the juvenile court conducted the November 13, 2014, termination hearing. Section 1912(a) dictates that no termination-of-parental-rights proceeding pertaining to an Indian child may be conducted until at least 10 days after an Indian tribe has received the notice required in that section. Thus, even assuming that DHR’s November 2014 inquiry to the tribe contained the type of notice contemplated by 25 U.S.C. § 1911(a), it is clear that the juvenile court conducted the termination hearing less than 10 days after the tribe received that notice.
Accordingly, we agree with the mother that the juvenile court failed to comply with the notice requirements of the ICWA. Therefore, we reverse the juvenile court’s judgment insofar as it terminated the mother’s parental rights to the child, and we remand the cause for the juvenile court to comply with the provisions of the ICWA and to determine whether, given the facts and posture of this action, as well as relevant Alabama caselaw, it may properly exercise jurisdiction over the action.
REVERSED AND REMANDED.
PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.

. Alexander testified, in part, as follows:
"Q. Now, as part of the policy and procedure for DHR in regard to [the child’s] Indian heritage, did [DHR] make inquiries as to any possible foster homes that had Indian heritage that would be available for [the child]?
"A. As part of the inquiry form, you know, that the tribe itself would be charged with, you know, intervening should they choose to do so.... ”